## FAILURE OF THE EVIDENCE TO SHOW THE CAUSE OF THE INJURY COMPLAINED OF.

Superior Court of Cincinnati.

OLIVE A. MCLAUGHLIN v. THE P., C., C. & ST. L. RAILWAY CO.*

Decided, May 16, 1917.

[Statement by Judge Pugh to the jury at the close of defendant's
case and of all the evidence, when he directed a verdict
in favor of defendant.]

*Directed Verdict for Defendant—Justified Where None of the Circumstances Favor, But All are Opposed, to the Theory of the Cause of the Injury Advanced by the Plaintiff.*

In an action for an injury received by a passenger in a railway car, alleged to have been caused by a piece of metal thrown off by the explosion of a torpedo on the parallel track, the absence of evidence of any occasion for the use of a torpedo by the railway company at that time and place, together with the fact that the torpedoes used by the company were of the paper variety from the use of which no injury could occur, and the further fact that even had a torpedo made in part of metal been exploded by a train on the parallel track it would have been physically impossible for any of the pieces to have reached plaintiff, affords sufficient ground for directing the jury to return a verdict for the defendant company.

I have finally arrived at the conclusion after considering this matter last night, that this case should have been withdrawn from the jury at the end of plaintiff's testimony, as requested by the defendant. In my judgment it is not a case in which plaint-

---

*Affirmed by the Court of Appeals in the following memorandum opinion:

"BY THE COURT—

"The record fails to disclose that any evidence whatever was offered tending to show negligence on the part of the defendant. The court was therefore justified in granting defendant's motion for a directed verdict in its favor."

iff can possibly be entitled to recover any damages at all, and I am going to point out one or two of the reasons why I think that is so, and to endeavor to make it plain to you.

You will remember there were only two witnesses of the plaintiff who testified as to the happening of the accident; one was the plaintiff herself, Mrs. McLaughlin, and the other one was a Mrs. Lawrence. You remember she was the singer who lived in Louisiana, and they read her deposition here. There was no other living person who testified to the happening of the accident, except this plaintiff and this other witness.

When a suit is brought and money is attempted to be recovered by a jury, the law requires that the person seeking to recover damages that way shall state clearly what it is that he or she complains about, and he has to state that in this paper that we call the petition, part of which was read to you in this case.

Now the plaintiff's case is that she was injured by the explosion of a torpedo on the track adjoining the one on which she was riding, and that torpedo was a torpedo being used by the defendant company or one of its employees in the course of its business, and that the explosion of the torpedo resulted in throwing particles of it some distance and to a height of ten or twelve feet, and that some particles om that torpedo came through the open window of the car in which she was riding, on the evening of the 2d day of May, 1912, and inflicted injuries from which to this day she claims she is still suffering.

What is there to show that any torpedo was used at all? Both these women say they heard an explosion. One of them said she heard something, evidently a missile, or particles of a missile, rebound on the glass pane. The other lady did not see anything of the missile, but she was injured, evidently by something that came in through the window by which she was seated.

What do we know about torpedoes? Remember, we must decide a case according to what we hear from the witness stand; we can not go beyond the witnesses' testimony, we are bound by

that, and we must be guided by the evidence and the law and nothing else; whether we like that way of doing or not, that is the law.

Let us look at this diagram. (Referring to drawing on black-board.) If this was a torpedo, as this lady claims, look what must have happened. The far track, the upper one toward the north there, the one that goes to Cincinnati, that is the one they have been calling the west track, and the one on the lower side is the east track; that is the one the train was on on which this lady was riding. She was in the coach on that track, on the left hand side of it, you remember, and she says she was struck on the left elbow, with the window open. Now, we are invited to believe that there was a torpedo on the west track, and that torpedo was exploded by the train that came down on that track, and threw the particles into the window. You must remember that when torpedoes are used at all, they are put on the rail on the engineer's side. Which is the engineer's side on the·diagram? The engineer's side is the rail nearest the top; so, if a torpedo was exploded by that train coming down on the west track, and the fragments blew into the window and struck this plaintiff, these fragments would have to be thrown through the body of the engine that exploded it. Just stop and consider it. It was on the upper track; it must have gone bodily through the engine and crossed the intervening space between the two tracks and into that window. That is one thing that is the trouble with the plaintiff's case in this instance.

This testimony is undisputed. There is no quarrel about this. We all agree that the torpedo is put on the engineer's side when it is put there by the railroad company or its employees. If anybody else put it there the railroad company is not responsible.

Torpedoes are used for calling attention of the engineer to a train that is expected. Torpedoes are put upon the track so that they will explode when the engine wheel runs over them, and notify the engineer to stop his engine there; that there

is some train, or obstruction on the track, or some workmen repairing the track, or that the train is delayed, or when something unusual occurs.

Now we have all ridden on trains a good many times, and you know you don't as a rule hear torpedoes; once in a while you do.

Was there anything here to show there was any emergency that called for the use of a torpedo? Both these trains were practically on time; there was nothing within half an hour of either one following them on the track. What is there to show that a torpedo would be used under those circumstances? Nothing at all. If a torpedo was exploded by a train on the west track, the torpedo was simply put there for the fun of it, it was simply thrown away, because it was not notice to anybody that there was anything on the west track, the track on which it is alleged the torpedo was exploded. It is not shown that there was any use for the torpedo even if we had testimony that there was a torpedo.

Then take the next thing. The only evidence that there was any kind of a torpedo used by the railroad company in 1912, is that they used these paper torpedoes. There is evidence that paper torpedoes do not cast off particles, they do not fly, or if they fly they fly a little distance and are like small feathers; one witness said that when he stood along the track, two or three feet away the paper might strike his trousers, but for a torpedo to explode so that the particles of it would fly twenty or eighteen feet and produce an injury on a woman's arm that would last from 1912 to 1917, is calling for a large stretch of imagination at the best.

There is evidence that there was an explosion of some kind. One witness said it sounded like a shotgun. There is no evidence that that explosion was on the track that the engine No. 219 was running on. There is testimony that something came in at the window; there is no testimony anywhere to indicate that it came from a torpedo, except that a train ran down on the other track. Under the circumstances, even if there had

been a torpedo, it could not come in the window without passing through the engine, and if it had come in it would have been nothing but a piece of paper.

I think that is enough to dispose of this case, so the direction of the court is that the jury bring in a verdict for the defendant.

---

[It will be noted that the opinion which follows is in the same case as the preceding opinion by Judge Pugh. It was rendered at the first trial of the case. At the second trial the jury disagreed, and at the third trial was terminated in the manner indicated above.]